**Electronically Filed
Intermediate Court of Appeals
30626
28-MAR-2014
09:11 AM**

NO. 30626

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE INVESTORS TRUST MORTGAGE
LOAN ASSET-BACKED CERTIFICATES 2006-OPT1,
Plaintiff-Appellee, v. MARLENE LYNN ROTH; 3M,
Defendant-Appellant, and 3M INVESTMENTS, INC.;
JOHN DOES 1-5; JANE DOES 1-5; DOE CORPORATIONS 1-
5; DOE PARTNERSHIPS 1-5; DOE ASSOCIATIONS 1-5; DOE
GOVERNMENTAL UNITS 1-5; and DOE ENTITIES 1-5,
Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-0717)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Marlene Lynn Roth (Roth) appeals
from a March 29, 2010 Circuit Court of the First Circuit (Circuit
Court) Judgment in favor of Plaintiff-Appellee LaSalle Bank
National Association, as Trustee for Merrill Lynch Mortgage
Investors Trust Mortgage Loan Asset-Backed Certificates, Series
2006-OPTI (LaSalle Bank).[1] Finding Roth in default of the terms
of a Confidential Settlement Agreement and Mutual Release
(Settlement Agreement)[2] entered into between Roth and Option One

---

[1] The Honorable Bert I. Ayabe presided. On September 14, 2010, the case was reassigned to the Honorable Patrick W. Border.

[2] The Settlement Agreement is filed in this court under seal.

Mortgage Corporation (Option One), the previous owner of the Adjustable Rate Note (Note) and Mortgage (Mortgage), which LaSalle Bank currently owns and holds, the Circuit Court granted LaSalle Bank's January 21, 2010 Motion for Summary Judgment and for Interlocutory Decree of Foreclosure. The Circuit Court denied Roth's Motion for Rehearing/Reconsideration.[3]

On appeal, Roth maintains, in sum, that the Circuit Court erred in (1) granting LaSalle Bank's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure and (2) denying her Motion for Rehearing/Reconsideration because Option One was the "actual" originator of the loan, was not in good standing in the State of California, did not obtain a certificate of authority to transact business in the State of Hawai'i pursuant to Hawaii Revised Statutes (HRS) § 414-433 (2004) before entering into the mortgage loan transaction, and violated Hawai'i's unfair and deceptive trade practice law, HRS Chapter 480 (1993 & Supp. 2006), thereby rendering the Note and Mortgage void and not capable of being assigned to LaSalle Bank.

After a careful review of the points raised and arguments made by the parties, the record on appeal, and applicable legal authorities, we resolve Roth's points on appeal as follows and affirm.

1.     Summary judgment was properly entered in LaSalle Bank's favor. We review the grant of summary judgment de novo. Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005). As the moving party, LaSalle Bank had the initial burden to establish the absence of any genuine issue of material fact entitling it to judgment as a matter of law. IndyMac Bank v. Miguel, 117 Hawai'i 506, 519, 184 P.3d 821, 834 (App. 2008).

Where a mortgagor defaults, "[t]he circuit court may assess the amount due upon a mortgage, whether of real or personal property, without the intervention of a jury, and shall

---

[3]     The Honorable Bert I. Ayabe presided.

render judgment for the amount awarded, and the foreclosure of the mortgage."  HRS § 667-1 (1993).[4]

> A foreclosure decree is only appropriate where all four material facts have been established: "(1) the existence of the Agreement, (2) the terms of the Agreement, (3) default by [Appellants] under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect."

IndyMac Bank, 117 Hawai'i at 520, 184 P.3d at 835 (quoting Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982)).  "The material inquiry relevant to a foreclosure decree is whether a default occurred[.]"  IndyMac Bank, 117 Hawai'i at 520, 184 P.3d at 835.  Viewing the evidence in the light most favorable to Roth, IndyMac Bank, 117 Hawai'i at 519, 184 P.3d at 834, we conclude that LaSalle Bank met its burden and Roth did not.

LaSalle presented documentary evidence, which Roth did not dispute, that (1) Roth signed the Note and Mortgage, which are currently owned and held by LaSalle Bank; (2) The terms of the agreement are as stated in the Note and Mortgage and Roth is in default under the terms of the Note and Mortgage; (3) Roth entered into a March 12, 2008 Settlement Agreement with Option One resolving her federal lawsuit to rescind the Note and Mortgage; (4) Roth failed to make payment by the deadline provided in the Settlement Agreement; (5) LaSalle Bank provided Roth notice of her default, demanded full repayment of the amount due under the Settlement Agreement and notified Roth of its intent to foreclose if she did not cure her default; and (6) Roth failed to cure her default.

After LaSalle Bank satisfied its initial burden, the burden of production shifted to Roth to demonstrate specific facts presenting a genuine issue worthy of trial.  IndyMac Bank, 117 Hawai'i at 519, 184 P.3d at 834.

Roth responded to LaSalle Bank's motion for summary judgment in the form of "Defendant Marlene Lynn Roth's

---

[4]     This language is now found in HRS § 667-1.5 (Supp. 2012).

Declaration in Opposition to Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure" (Declaration) that was ordered sealed by the Circuit Court.[5] Attached to the Declaration is a Memorandum in Opposition in which counsel alleged ten purported "material factual issues in genuine dispute" but provided no argument in support of these allegations nor did counsel specifically point to any evidence that placed these "factual issues" in dispute.

On appeal, Roth argues that this Loan was "table-funded," that the Circuit Court failed to determine whether Option One was authorized to do business in Hawai'i when the Loan and Mortgage were executed, and that there were genuine issues of material fact.

Even if we were to assume that the Loan was table-funded, Roth fails to establish the materiality of this fact. As recognized by the court in Beneficial Hawaii, upon which she relies, even if Roth's loan was table-funded, "'a loan is "made" by the named creditor, even when the funds are actually provided by a third party.'" Beneficial Hawaii, Inc. v. Kida, 96 Hawai'i 289, 308, 30 P.3d 895, 914 (2001) (citation omitted). In this case, the Loan and Mortgage documents reveal that the creditor was "Meridian Mortgage Inc, a Hawaii Corporation" (Meridian).

Next, Roth argues that there were genuine issues of material fact because, citing to HRS Chapter 414, (1) Option One was unauthorized to conduct business in Hawai'i without a certificate of good standing (2) that Option One's Loan with Roth was "invalid at its inception" and (3) Option One engaged in unfair and deceptive business practices to entice Roth to enter into a loan transaction with a lender who was not licensed to do business in Hawai'i. These arguments, which all depend on Roth's

---

[5]      The Circuit Court ordered the Declaration sealed upon Roth's motion. The basis for this motion was the fact that the Circuit Court had previously sealed Exhibit E, a copy of the Settlement Agreement, as attached to LaSalle Bank's motion for summary judgment to preserve the confidentiality of that Settlement Agreement, and that Roth had referred to the Settlement Agreement "throughout" her Declaration.

position that Option One was not authorized to do business in Hawai'i, are also without merit.

First of all, as previously stated, the maker of the Loan was Meridian, not Option One. Roth does not argue that Meridian was not authorized to do business in Hawai'i. Moreover, Option One was not required under Chapter 414 to obtain a certificate of authority from the State of Hawai'i, to take assignment of the Loan and Mortgage. While Chapter 414 requires a certificate of good standing to "transact business" in Hawai'i, conducting mortgage-related activities or enforcing its rights under the Note and Mortgage, do not constitute "transacting business" within the meaning of that chapter. HRS §§ 414-431(b)(7) and (8) (2004).[6]

Roth also argues that, as Sand Canyon only assigned servicing rights to LaSalle, the latter has no standing to bring

---

[6]     HRS § 414-431 provides, in relevant part:

    [§414-431]  **Authority to transact business required.** (a) A foreign corporation may not transact business in this State until it obtains a certificate of authority from the department director.

        (b)     The following activities, among others, do not constitute transacting business within the meaning of subsection (a):

        .   .   .   .

        (7)     Creating as borrower or lender, or acquiring, as borrower or lender, indebtedness, mortgages, and security interests in real or personal property;

        (8)     Securing or collecting debts or enforcing mortgages and security interests in property securing the debts[.]

        .   .   .   .

        (c)     The list of activities in subsection (b) is not exhaustive.

    Roth also argues that, "Option One's failure to comply with statutory requirements set forth under HRS §414-433(b) raises a material question of fact as to whether Option One could legally enter into the mortgage transaction with Ms. Roth and whether said mortgage transaction violated H.R.S. Chapters 480 and 481A[,]" making the same void. As we conclude Option One was not required to obtain a certificate of authority, Roth's argument that there was a genuine issue regarding violations of HRS Chapters 480 and 481A must also fail.

this law suit.  For this assertion, Roth once again argues that Option One was not authorized to do business in Hawaiʻi under HRS Chapter 414.  As Chapter 414 does not apply to this transaction, Roth's argument is without merit.

Roth also maintains, in conjunction with this standing argument, that Sand Canyon "has no ownership to the note and mortgage" based on Exhibit 17 attached to the Declaration.[7]  It purports to consist of excerpts from H&R Block's quarterly filing for the period ending January 31, 2009, apparently from an online source called "edgar-online.com".  Roth argues that Exhibit 17 "raises a material question of fact that must preclude the granting of summary judgment in favor of LaSalle."  It does nothing of the kind.  Roth makes no argument that Exhibit 17 is admissible evidence and the Declaration, although referring to Exhibit 17, does not attest that the information contained therein is within her personal knowledge.

More importantly, Exhibit 17 does not support Roth's argument.  Even if we were to assume the document was admissible, it does not establish Sand Canyon did not own the Note and Mortgage at the time it was transferred to LaSalle Bank.  The operative excerpts are merely descriptions of "Litigation and Claims Pertaining to Discontinued Mortgage Operations" and states, *inter alia*, that "Although mortgage loan origination activities were terminated and the loan servicing business was sold during fiscal year 2008, SCC remains subject to investigations, claims and lawsuits pertaining to its loan origination and servicing activities that occurred prior to such termination and sale."  Even if we were to infer this is a reference to Sand Canyon's operations, this general statement does not establish Sand Canyon formally divested itself of all loans and mortgages it held before the end of fiscal year 2008.  Although we must view the evidence in the light most favorable to

---

[7]      Exhibit 17, although part of Roth's sealed filing, does not appear to contain confidential information and Roth does not argue that it does.

the non-moving party, Querubin, 107 Hawai'i at 56, 109 P.3d at 697), Exhibit 17 simply fails to create a genuine issue regarding whether LaSalle obtained Roth's Note and Mortgage.

We therefore conclude that Roth has not identified any genuine issues of material fact that undermine the Circuit Court's grant of summary judgment.

2.    Finally, the Circuit Court did not err in denying Roth's motion for Rehearing/Reconsideration.   "The purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." Amfac, Inc. V. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 27 (1992). The only "new evidence" that Roth advanced in support of her motion was that "evidence arrived" that Option One had been suspended from conducting business in the State of California in 1993 for not paying state taxes.   However, in her Declaration, Roth had already advanced this argument that Option One was not in good standing and thus did not have the authority to enter into the Note and Mortgage.   As such, Roth's "new evidence" allegedly proving Option One's suspension, was in fact not "new." In any event, as discussed above, Option One did not have to demonstrate it was in good standing when it obtained the Note and Mortgage made by Meridian Mortgage.   Consequently, we cannot conclude that the Circuit Court abused its discretion in denying Roth's motion for Rehearing/Reconsideration.

Based on the foregoing, the March 29, 2010 Judgment entered by the Circuit Court of the First Circuit is affirmed.

DATED:   Honolulu, Hawai'i, March 28, 2014.

On the briefs:

Keoni K. Agard
Dexter K. Kaiama,
for Defendant-Appellant.

Jade Lynne Ching
Shellie K. Park-Hoapili,
(Alston Hunt Floyd & Ing),
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge